UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIELIS GONZALEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JB, AND ANDY NAPOLEONIS, INDIVIDUALLY AND AS NEXT FRIEND OF AN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT AND JURY DEMAND

## PARTIES

1. Plaintiff Marielis Gonzalez is an individual residing at 12 Bailey Street, Dorchester, Suffolk County, Massachusetts 02124.

2. Plaintiff Andy Napoleonis is an individual residing at 12 Bailey Street, Dorchester, Suffolk County, Massachusetts 02124.

3. JB is the minor daughter of Marielis Gonzalez. Marielis Gonzalez brings this action as her next friend.

4. AN is the minor daughter of Marielis Gonzalez and Andy Napoleonis. Andy Napoleonis brings this action as her next friend.

1

5.	The United States of America (the "U.S.") is a defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq.* arising from acts and/or omissions of employees and agents of the U.S. who were working at DotHouse Health, Inc. ("DotHouse") located at 1353 Dorchester Avenue, Dorchester, MA 02122.

## JURISDICTION AND VENUE

6.	The jurisdiction of this Court is founded upon the Federal Tort Claims Act, 28 U.S.C. 2671, et seq.  The damages incurred by plaintiffs were caused by the negligent or wrongful acts or omissions of certain employees of the U.S. while acting within the scope of their office or employment, under circumstances where the U.S., if a private person, would be liable to Marielis Gonzalez, individually and as next friend of JB, and Andy Napoleonis, individually and as next friend of AN, in accordance with the laws of the Commonwealth.

7.	On December 27, 2018, plaintiffs duly presented a Notice of Tort Claims, pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq.*, and 28 C.F.R. 14., et seq., giving notice of plaintiffs' injuries caused by the negligent and wrongful acts or omissions of certain employees of the U.S. while acting within the scope of their office or employment, under circumstances where the U.S., if a private person, would be liable to the plaintiffs in accordance with the laws of the Commonwealth of Massachusetts.  Amended forms were presented on January 10, 2019.  A copy of this Notice is attached as Exhibit A.

8.	On May 29, 2019, the U.S. responded to plaintiffs' Notice of Tort Claims, denied the administrative claim, and notified Plaintiff of their right to file suit within six months. A copy of this letter is attached as Exhibit B.

9. Venue is proper in the District of Massachusetts under 28 U.S.C. §1391 because the events or omissions giving rise to the claims of the plaintiffs occurred in the District of Massachusetts.

**FACTS**

10. Beginning in 2009, Ms. Gonzalez began seeing Defendants Nsa Henshaw M.D. ("Dr. Henshaw") and Caroline Pahk, M.D. ("Dr. Pahk") for primary care at DotHouse.

11. In 2015, when Ms. Gonzalez was twenty-eight years old, she discovered a lump near her nipple on her right breast. She became concerned and brought the lump to the attention of her primary care physicians, Dr. Henshaw and Dr. Pahk, during multiple visits to DotHouse. Although Ms. Gonzalez expressed her concerns regarding the breast lump multiple times in 2015, Dr. Pahk and Dr. Henshaw told her that she was too young to get breast cancer and that the lump would go away in time.

12. In early 2016, Ms. Gonzalez began to notice changes in the skin on her right breast near the breast lump that she had previously discovered, which she brought to the attention of Dr. Henshaw and Dr. Pahk at appointments in 2016. At these appointments, Ms. Gonzalez told Dr. Henshaw and Dr. Pahk that she was very worried about her breast lump and the changes to her skin and requested a mammogram. Despite Ms. Gonzalez's expressions of concern and request for scans of her breast lump, Dr. Henshaw and Dr. Pahk continued to ignore her concerns.

13. At one appointment with Dr. Pahk on March 18, 2016, Ms. Gonzalez told Dr. Pahk that the lump on her right breast was "now causing burning and getting bigger" and that the lump was causing "misshape in [her] breast." Dr. Pahk performed a physical exam on Ms. Gonzalez, noting a "1 CM hard rubbery mass at 11 o'clock 2-3 CM from nipple [with]

3

surrounding thicker tissues," and referred Ms. Gonzalez to Boston Medical Center ("BMC") for an ultrasound of her right breast.  On March 30, 2016, the right breast ultrasound ordered by Dr. Pahk was performed on Ms. Gonzalez at BMC.  The ultrasound did not detect evidence of malignancy.

14. Ms. Gonzalez returned to DotHouse on July 18, 2018 to again address her persistent breast lump, which by this time had gotten bigger and was causing her pain.  Ms. Gonzalez told Dr. Henshaw that she felt that the lump was distorting her nipple.  Dr. Henshaw noted Ms. Gonzalez's "inverted nipple, ill-defined 3x4 cm R breast mass 9-11o'clock breast tissue…No induration, skin peau d'orange change."  A "skin peau d'orange change" is a description typically used to describe cancer.  Despite her observations and Ms. Gonzalez's complaints, Dr. Henshaw did not suggest that Ms. Gonzalez have additional testing done, such as a mammogram.  Dr. Henshaw subsequently referred Ms. Gonzalez to the Belkin Breast Clinic at BMC.

15. On September 9, 2016, Ms. Gonzalez saw Ambili Ramachandra, M.D. ("Dr. Ramachandran") at BMC's Belkin Breast Clinic to address the lump in her right breast.  Ms. Gonzalez told Dr. Ramachandran that she felt a "sharp pain and burning sensation" in her right breast, that she felt like her "nipple [was] being pulled inside," that her pain and the mass coincided and that the lumps were getting bigger.  Dr. Ramachandran sent notes from her examination of Ms. Gonzalez to Dr. Henshaw at DotHouse.  Despite Dr. Henshaw's awareness of Ms. Gonzalez's complaints of sharp pain, burning and pulling and her assertion that the lump was growing, Dr. Henshaw once again ignored Ms. Gonzalez's concerns and did not refer Ms. Gonzalez for further resting.

16. Ms. Gonzalez returned to Dr. Henshaw at DotHouse in October 28, 2016 and November 28, 2016, with severe back pain. She told Dr. Henshaw that she had been experiencing severe pain in her mid-back approximately three times per week and that the pain had moved into her lower back. Dr. Henshaw referred Ms. Gonzalez to physical therapy for evaluation and Ms. Gonzalez began physical therapy in November of 2016. Dr. Henshaw never considered or ruled out a more serious cause of her back pain.

17. On December 28, 2016, Ms. Gonzalez's breast and back pain became so severe that she went to the emergency department at Carney Hospital ("Carney"), where she was treated by Swait Dhanireddy, M.D. Ms. Gonzalez told Dr. Dhanireddy that the pain in her breast had worsened over the last few months and that she had been experiencing mid and low back pain and neck pain for a year, which had increased over time. Dr. Dhanireddy advised Ms. Gonzalez to take Tylenol and Motrin, to continue with physical therapy and to follow up with her primary care physicians if further testing was needed.

18. Ms. Gonzalez did follow up with Dr. Henshaw on January 20, 2017, just two weeks after her visit to the Carney Emergency Department. Ms. Gonzalez reported to Dr. Henshaw that her pain was now in her mid and lower back as well as across her chest area. Dr. Henshaw ordered a Lumbar Spine Radiograph of Ms. Gonzalez, which detected no acute osseous abnormalities and minimal degenerative change. Dr. Henshaw did not further investigate the cause of Ms. Gonzalez's back pain.

19. Just three days later, on January 23, 2017, Ms. Gonzalez saw Kathryn Harris, M.D. at DotHouse regarding her ongoing back pain. Ms. Gonzalez reported to Dr. Harris that she had been having back pain – ranging from her neck to her lower back - for over two months

5

and that physical therapy was not helping.  Ms. Gonzalez also expressed concern about her breast lump, telling Dr. Harris that she felt uncomfortable in the nipple area.

20. Ms. Gonzalez returned to DotHouse on February 3, 2017 and saw Vasileia Varvarigoue, M.D.  Ms. Gonzalez told Dr. Varvarigoue that she had been experiencing approximately three months of pain over the entirety of her spine, which had been getting worse over time, and that she had significant back pain when she coughed, sneezed and tried to sleep. She reported that she had gone to physical therapy for her back pain, but that she had been discharged because she was not making any improvements.  X-rays of Ms. Gonzalez's lumbar, cervical and thoracic spine showed mild straightening of the cervical lordosis, but no degenerative changes or fractures.

21. On February 22, 2017, Ms. Gonzalez experienced excruciating back and hip pain such that she could not get out of bed even with her husband's help.  She called 911 and was transported to the Emergency Department at Carney where she had chest, abdomen, and pelvic CT scans.  These scans revealed that Ms. Gonzalez was suffering from stage four breast cancer, which had metastasized to her lungs, spine and bones.  The doctors at Carney told Ms. Gonzalez that the cancer had weakened the bones in her back, which had caused them to break.  They advised Ms. Gonzalez that if she did not receive proper treatment immediately, the broken bones in her back could press on her spinal cord which could cause her to lose function of her legs.

22. In March 2017, Ms. Gonzalez had a mammogram and right breast biopsy at BMC, which confirmed her diagnosis of stage four metastatic breast cancer.  After confirming her diagnosis, Ms. Gonzalez received radiation and chemotherapy treatment at Brigham and Women's Hospital ("BWH") and Dana Farber Cancer Institute.

23. In or about June 2018, Ms. Gonzalez's doctors informed her that the chemotherapy treatment was no longer improving her health. Ms. Gonzalez made the difficult decision to stop chemotherapy treatment and began receiving end of life care at BWH. She continues to receive palliative care.

## COUNT I
### Marielis Gonzalez v. United States of America
### (Negligence)

24. Plaintiffs repeat, reallege and incorporate the allegations in the paragraphs above as though fully set forth herein.

25. Defendants Dr. Pahk and Dr. Henshaw had a doctor-patient relationship with Ms. Gonzalez and owed Ms. Gonzalez a duty to exercise reasonable skill and attention in their care and treatment of her.

26. Defendants Dr. Pahk and Dr. Henshaw failed to exercise reasonable skill and attention in their care and treatment of Ms. Gonzalez, which proximately caused and/or significantly contributed to her injuries.

27. Defendants Dr. Pahk and Dr. Henshaw provided care and treatment to Ms. Gonzalez that deviated from accepted standards of medical care in 2015-2017.

28. As a direct and proximate result of the negligence of Defendants Dr. Pahk and Dr. Henshaw, Ms. Gonzalez suffered great pain, emotional distress, and physical disability, and has required additional medical procedures and other necessary medical treatment.

29. Ms. Gonzalez has also incurred great expense for her medical care and attention of various kinds as well as lost income and lost earning capacity.

## COUNT II
### Marielis Gonzalez as Next Friend of JB and Andy Napoleonis, Individually and as Next Friend of AN v. United States of America
### (Loss of Consortium)

30. Plaintiffs repeat, reallege and incorporate the allegations in the paragraphs above as though fully set forth herein.

31. As a direct and proximate result of the defendants' negligence, Ms. Gonzalez's husband, Andy Napoleonis, and her two minor children, JB and AN, have been deprived of the consortium, companionship, comfort, care, assistance, society and services of their wife and mother, Ms. Gonzalez.

## COUNT III
### Marielis Gonzalez v. United States of America
### (Vicarious Liability / Respondeat Superior)

32. Plaintiffs repeat, reallege and incorporate the allegations in the paragraphs above as though fully set forth herein.

33. DotHouse employed the medical caretakers who cared for Ms. Gonzalez at all relevant times, including but not limited to Dr. Henshaw and Dr. Pahk.

34. Dr. Pahk and Dr. Henshaw owed Ms. Gonzalez a duty of care, which they breached by failing to timely diagnose her breast cancer. This breach of the standard of care caused or substantially contributed to the plaintiffs' damages. DotHouse was at all times vicariously liable for the negligent care and treatment rendered to Ms. Gonzalez by defendants Dr. Pahk and Dr. Henshaw.

## PRAYER FOR RELIEF

WHERFORE, the plaintiffs request that this Court grant the following relief:

(i)  judgment in favor of the plaintiffs on their respective claims for relief as set forth in the Complaint, with accompanying damages under applicable statutory and/or common law, including pain and suffering;

(ii)  post-judgment interest from the date of filing;

(iii)  recoverable costs associated with bringing this lawsuit; and

(iv)  such other and further relief as this Court deems just and proper.

## JURY DEMAND

The plaintiffs hereby demand a jury on all counts so triable.

PLAINTIFFS MARIELIS GONZALEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JB, AND ANDY NAPOLEONIS, INDIVIDUALLY AND AS NEXT FRIEND OF AN,

By their attorneys,

/s/ Cathleen N. Augusto
Lisa G. Arrowood (BBO # 022330)
Cathleen N. Augusto (BBO #696479)
ARROWOOD LLP
10 Post Office Square
7th Floor South
Boston, MA  02109
(617) 849-6200 telephone
(617) 849-6201 facsimile

Dated:  August 30, 2019