## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Richard Blank, Esq., as personal representative of the Estate of Marielis Gonzalez; Andy Napoleonis, Individually and as next friend of AN; and Melissa Coury, as next friend of JB, <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | Civil Action No. 19-11855-JCB |

### Government's Post- Trial Brief

On February 26, 2021, the Massachusetts Supreme Judicial Court (SJC) in a medical malpractice case held that the but-for standard is the appropriate standard of factual causation in most cases, including those involving multiple alleged causes. *Doull v. Foster*, 163 N.E.3d 976, 979-980 (Mass. 2021). In doing so, the SJC, abrogating *Matsuyama v. Birnbaum*, 890 N.E.2d 819 (Mass. 2008), eliminated the use of the substantial contributing factor test. The Court has invited the parties to brief the issue of how *Doull* affects this medical malpractice/wrongful death lawsuit.

In their pre-trial filing, Plaintiffs relied on *Matsuyama* and the substantial-factor test to argue that their evidence showed that the Dot House doctors caused the claimed injuries. *See* ECF 98 at 50-51 (¶¶ 233-237). Based on the SJC's reasoning in *Doull, see* 163 N.E.3d at 985-990, the government expects that Plaintiffs will amend their conclusions of law.

Under *Doull,* the government is not liable to Plaintiffs. Like the *Doull* plaintiffs, Plaintiffs failed to prove that their injuries would not have occurred without the actions of the named providers. To the contrary, like *Doull,* expert testimony established that the decedent's condition had been present for a long time before it was discovered and that her prognosis would have been the same had the diagnosis occurred at the dates suggested by Plaintiffs. *See Doull*, 163 N.E.3d at 981. Specifically, evidence showed that the biology of Marielis Gonzalez's tumor and the way it spread was such that a diagnosis in 2015 or 2016 would not have changed Ms. Gonzalez's ultimate outcome. And even if the Court finds that the cancer did not exist or was Stage 1 or less in 2015 or 2016, the result is still the same: the doctors' referral to a specialist for diagnosis is not the but-for cause of Plaintiffs' harms.

### The world before *Doull: Matsuyama* and its aftermath.

In 2008, the SJC ruled that medical malpractice plaintiffs in Massachusetts could recover under a "loss of chance" theory. *Matsuyama*, 890 N.E.2d at 823. The loss-of-chance doctrine "views a person's prospects for surviving a serious medical condition as something of value, even if the possibility of recovery was less than even prior to the physician's tortious conduct." *Id*. That same day, the SJC determined that a defendant can be liable for causing the wrongful death *or* for the loss of a chance to survive, but not for both. *Renzi v. Paredes*, 890 N.E.2d 806, 813 (Mass. 2008).

The allegations in *Matsuyama* are similar to those presented here. Both cases involve allegations that a PCP missed the warning signs of a cancer, did not order a specific type of testing, and caused metastasis to develop. *See Matsuyama*, 890 N.E.2d

at 824-826. Unlike this case, however, the defendant doctor in *Matsuyama* did not send the patient for specialist evaluation. *See id.* More importantly, plaintiff in *Matsuyama* sought damages for loss of chance; Plaintiffs here do not.

After determining that Massachusetts law permits recovery for loss of chance of survival, the *Matsuyama* court considered causation. The defendant argued that the trial court erred by instructing the jury to use the substantial-factor, rather than the but-for test, to determine whether the actions of a single doctor caused the alleged harm. *Matsuyama*, 890 N.E.2d at 842. The SJC concluded that the but-for test was the proper standard but that the defendant had not been prejudiced by the use of the substantial-factor test because the trial judge's instructions to the jury, while perhaps inartful, made it clear that the standard was but-for. *Id.* at 842-843.

In evaluating the issue, however, the SJC in *Matsuyama* observed that "[t]he 'substantial contributing factor' test is useful in cases in which damage has multiple causes, including . . . cases with multiple tortfeasors in which it may be impossible to say for certain that any *individual* defendant's conduct was a but-for cause of the harm, even though it can be shown that the defendants, in the aggregate, caused the harm." *Matsuyama*, 890 N.E.2d at 842. Subsequently, litigators have used the substantial-factor test to analyze causation in medical malpractice cases: indeed, before *Doull* was decided, Plaintiffs in their Complaint and pre-trial briefs, citing *Matsuyama* or the substantial-factor standard, asked the Court to conclude that the Dot House PCPs caused or substantially contributed to their injuries. ECF No. 1, ¶ 34; ECF No. 112, ¶ 40; **ECF 98 at 50-51 (¶¶ 233-237).**

**Abrogating *Matsuyama*, *Doull* held that the but-for test, and not the substantial-factor standard, should apply in most cases.**

Like the case before this court, *Doull* involved allegations that the actions of two members of the same medical office over the course of a few years delayed a diagnosis that resulted in an untimely death. In *Doull*, the decedent started seeing the two defendants—a PCP and a nurse practitioner—in 2008; in early Spring 2011, she came to the practice three times with shortness of breath. *Doull*, 163 N.E.3d at 980. Each time she came to the practice, the nurse practitioner examined her and diagnosed her issue as a symptom of asthma and allergies. *Id.* The PCP did not examine the decedent. *Id.* In May 2011, the decedent had a seizure, went to the hospital, and was diagnosed with a pulmonary embolism and a rare disease called CTEPH. *Id.* About four years later, the decedent succumbed to that disease. *Id.* at 981. The decedent's family sued the practice, and a jury found that while the nurse practitioner had been negligent in her diagnosis and the PCP had been negligent in his supervision, such negligence did not cause the decedent's death. *Id.*

On appeal, the *Doull* plaintiffs argued that the trial judge had improperly instructed the jury by using the but-for test instead of the substantial factor test because there were multiple potential tortfeasors. *Doull*, 163 N.E.3d at 982. The SJC disagreed, holding that the but-for test was the appropriate standard in the case. *Id.* The SJC further clarified how juries in Massachusetts should be instructed on causation going forward, explaining that causation has two components, factual (but for) causation and legal (proximate) causation, and that the use of the substantial-factor test and its "confusing terminology . . . invites the jury to skip the factual

4

causation inquiry altogether." *Doull*, 163 N.E.3d at 988. The SJC further explained that the "use of the substantial factor language also conflates and collapses the concepts of factual and legal causation." *Id*. at 988.

The SJC then took the affirmative step of eliminating the substantial-factor test. *Doull*, 163 N.E.3d at 989. In doing so the SJC "recognize[d] that the substantial factor test is a familiar standard in Massachusetts" and had been used under various circumstances, without the SJC's endorsement. *Id*. at 990-991 (citing *Matsuyama*, 890 N.E.2d at 819). The SJC concluded: "Having thoroughly considered these standards now, we conclude that the substantial contributing factor test should no longer be used in most negligence cases.*" Id*. at 992.

### The evidence presented at trial showed that Plaintiffs did not meet their burden to establish factual causation.

The government anticipates that Plaintiffs will amend their conclusions of law to argue that the but-for test for factual causation applies in this case and they met that standard. The evidence adduced at trial, however, shows otherwise.

"[A] defendant cannot and should not be held liable for a harm unless the defendant caused the harm." *Doull*, 163 N.E.3d at 982. "Causation has traditionally involved two separate components: the defendant had to be both a factual cause (or 'cause in fact') and a legal cause of the harm." *Id*. at 982-983. "Generally, a defendant is a factual cause of a harm if the harm would not have occurred 'but for' the defendant's negligent conduct." *Id*. at 983 (citing W.L. Prosser & W.P. Keeton, Torts § 41, at 265 (5th ed. 1984) ("An act or an omission is not regarded as a cause of an event if the particular event would have occurred without it")).

Here, the evidence at trial did not show that Dr. Pahk's or Dr. Henshaw's actions or inactions caused Ms. Gonzalez's death or affected her prognosis or the ultimate outcome. The bottom line in this case is that the biology of Ms. Gonzalez's tumor and the manner in which it spread was such that a diagnosis in either 2015 or 2016 would not have prevented Ms. Gonzalez's death. Moreover, the Dot House doctors referred her to specialists and received reports informing that there were no suspicious findings and multiple doctors at different medical centers examined Ms. Gonzalez and did not suspect cancer.

The pathology of the tumor is not in dispute. Everyone agrees that Ms. Gonzalez's tumor was estrogen receptor positive, progesterone receptor positive, and HER2 positive. The presence of those factors indicate what treatments are likely to be most effective. Although tumors that are "triple positive," like Ms. Gonzalez's tumor was, can have a good prognosis in *some* patients, that is not the case for *all* patients, and sadly, it was not the case for Ms. Gonzalez, who did not have a durable response to the treatments that she was given. Her treatments had to be stopped because her disease continued to progress after she got them, and they were causing her more harm than good. Importantly, she would not have been given a different amount or type of treatment had her cancer been diagnosed earlier.

Further, the extensive metastasis that Ms. Gonzalez had in March 2017 would have taken more than two years to develop. Everyone agrees that Ms. Gonzalez's tumor was Grade 2, an intermediate cancer which is not the fastest-growing or the slowest-growing type of cancer. And it is undisputed that Ms. Gonzalez did not have

hereditary factors for breast cancer, which would have been another indicator that the tumor, while aggressive, was not so rapidly-growing that discovery in 2015 or 2016 would have made a difference. Based on what is known about how cancers grow, it would take significant time, and certainly longer than two years, for Ms. Gonzalez's tumor to get big enough (close to two centimeters at a minimum) to destroy a vertebral body. Given the extent of the disease that Ms. Gonzalez had when her cancer was discovered, it more likely than not took approximately five or six years for the metastases to cause the problems that they did. Thus, the evidence shows that Ms. Gonzalez's cancer was present and metastasized before 2016 or 2015.

The evidence before this Court thus is similar to what led the jury in *Doull* to determine that a provider's failure to diagnose a patient was not the but-for cause of that patient's death. *Doull*, 163 N.E.3d at 981 (noting defense expert testified that due to the chronic nature of the patient's blood clots, the outcome would have remained the same had her PCP diagnosed her earlier). And in analogous circumstances, the Supreme Judicial Court in 1995 directed that summary judgment should enter for the defendant doctors in a case where the plaintiff did not show, through evidence, that an earlier biopsy would have changed the outcome for the patient. *Rudenauer v. Zafiropoulos*, 837 N.E.2d 278, 283 (2005) (observing that "[t]he only proffered testimony on causation is that "had a biopsy been performed [earlier], it likely would have resulted in a curative [procedure]"). Finally, the government has been found not liable in this district where the evidence showed that metastasis was present at the time of the allegedly negligent actions. *Santos v. United States*, 603 F.

Supp. 417, 420 (D. Mass. 1985) (crediting defense expert opinion that "the prognosis for plaintiff would be no different had the cancer been treated" nine months earlier).

Plaintiffs have not met their burden of proof in this case. Specifically, they have failed to prove that either an earlier diagnosis or a biopsy or different testing in 2015 or 2016 would have affected the ultimate outcome in this case. According to Plaintiffs, because Ms. Gonzalez was felt to have a one centimeter lump in March 2016 and a 3 x 4 centimeter ill-defined mass in July 2016, her cancer must have been at Stage 1 (and probably curable) in March 2016 and at most Stage 2 in July 2016. This analysis misses the mark for a few reasons. First, a doctor's estimation of the size of a lump, without imaging, is notoriously unreliable. Second, the analysis does not account for the fact that Dr. Ramachandran in September 2016 found no mass at all. Dr. Ramachandran testified that she performed her exam in the manner that Plaintiffs' expert stated would have been appropriate, once with the patient upright and once lying down. Plaintiffs' analysis also does not consider that three other doctors—Dr. Dhanireddy, Dr. Harris, and Dr. Varvarigou—subsequently examined Ms. Gonzalez, and each felt something different.

In addition to failing to account for the mercurial presentations shown by this specific patient's disease. Plaintiffs ignore the undisputed fact that Ms. Gonzalez's tumor was a grade 2 and therefore not one of the most rapidly-growing cancers. And finally, Plaintiffs' own expert, Dr. Tartter, testified that his opinion would change if Ms. Gonzalez had not brought her breast concern to the attention of the Dot House doctors in 2015 – suggesting that discovery in 2016 would not be dispositive.

Case 1:19-cv-11855-JCB   Document 143   Filed 03/31/21   Page 9 of 10

For all these reasons, even if the Court concludes that one or more doctors breached the standard of care, either by not directly ordering a biopsy despite the specialists' reports of no suspicious findings or mass, or in some other way, Plaintiffs failed to prove that it was more likely than not that the doctors' actions were the but-for cause of Plaintiffs' injuries. Unfortunately for Ms. Gonzalez, it was the biology of her tumor and the way in which it spread—and not Dot House—that caused her tragic early death.

Regarding the separate requirement of proximate causation. *Doull* observed:

Additionally, for the defendant to be liable, the defendant must have also been a legal cause of the harm. This means that the harm must have been within the scope of the foreseeable risk arising from the negligent conduct. This aspect of causation is based on considerations of policy and pragmatic judgment. These considerations are separate and distinct from factual causation.

*Doull*, 163 N.E.3d at 983-984 (cleaned up). As the government has argued in its Amended Findings of Fact and Conclusions of Law, the United States is not the proximate cause of Plaintiffs' injuries. It was not reasonably foreseeable that the doctors' decision to send Ms. Gonzalez to Belkin for evaluation would delay a diagnosis.

In any event, the Court need not even reach causation. Contrary to Plaintiffs' claims the Dot House doctors adhered to the standard of care by examining Ms. Gonzalez, thoroughly documenting their findings, and referring Ms. Gonzalez to a comprehensive breast center to rule out breast cancer each time she mentioned having a right breast lump or concern. The Dot House doctors did not push her off. They pushed her forward.

## Conclusion

For the reasons stated here, and in the government's Amended Findings of Fact and Conclusions of Law (containing citations to the evidence), the Court should find that the United States is not liable to Plaintiffs and enter judgment in its favor.

Respectfully submitted,

The United States of America

By its attorneys,

Nathaniel R. Mendell
Acting United States Attorney

*/s/Annapurna Balakrishna*
Annapurna Balakrishna
Eve A. Piemonte
Assistant United States Attorneys
John J. Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
annapurna.balakrishna@usdoj.gov
eve.piemonte@usdoj.gov
(617) 748-3111

March 31, 2021